# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1564

———————————————

Arnold Fleck

*Plaintiff - Appellant*

v.

Joe Wetch, President of the State Bar Association of North Dakota, et al.

*Defendants - Appellees*

——————

Appeal from United States District Court
for the District of North Dakota - Bismarck

——————

Submitted: April 4, 2017
Filed: August 17, 2017

——————

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

——————

LOKEN, Circuit Judge.

In 2014, North Dakota attorney Arnold Fleck volunteered time and money to support Measure 6, a state ballot measure to establish a presumption that each parent is entitled to equal parental rights. North Dakota has an integrated bar, meaning that Fleck and other licensed attorneys must maintain membership in and pay annual dues to the State Bar Association of North Dakota ("SBAND") as a condition of practicing

law.[1] When Fleck learned that SBAND was using his compulsory fees to oppose Measure 6, he filed a lawsuit seeking declaratory and injunctive relief, asserting three First Amendment claims. First, he alleged that SBAND's procedures for allowing members to object to non-germane expenditures failed to comply with the minimum safeguards required by Keller v. State Bar of California, 496 U.S. 1 (1990), and Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292 (1986). This claim was resolved by a November 2015 settlement in which SBAND revised its license fees statement. Second, Fleck alleged that an integrated bar violates his freedoms not to associate and to avoid subsidizing speech with which he disagrees. The district court dismissed this claim as barred by Keller. Fleck concedes we are bound by Keller, so we need not further address this issue. Third, he alleged that SBAND's "opt-out" procedure violates his right to affirmatively consent before subsidizing non-germane expenditures. The district court[2] granted summary judgment dismissing this claim, the subject of Fleck's appeal. Reviewing this ruling *de novo*, we affirm.

**1. The First Amendment Landscape.** In International Association of Machinists v. Street, 367 U.S. 740, 774 (1961), a divided Supreme Court upheld the validity of a Railway Labor Act provision authorizing "union shop" collective bargaining agreements that require railroad employees to pay union dues, fees, and assessments as a condition of continued employment. Four Justices upheld the statute by construing it as "denying the unions the right, over the employee's objection, to use his money to support political causes which he opposes," id. at 768 (opinion of Brennan, J., for the Court); a fifth Justice agreed to this remedy "dubitante," id. at 779 (Douglas, J., concurring). That same day, a divided Court held that a State may constitutionally condition practicing law on membership in an integrated bar association. There was no majority opinion, and Justice Brennan's four-Justice

[1]North Dakota's integrated bar is codified in N.D.C.C. §§ 27-11-22, 27-12-02.

[2]The Honorable Daniel L. Hovland, Chief Judge of the United States District Court for the District of North Dakota.

plurality did not address whether an integrated bar association may use a member's compulsory fees to support political activities that he or she opposes. See Lathrop v. Donohue, 367 U.S. 820, 843-844 (1961).

In Abood v. Detroit Board of Education, 431 U.S. 209 (1977), applying Street and First Amendment principles, the Court held that public sector unions may collect compulsory "agency fees" from non-members within the bargaining unit to fund activities germane to collective bargaining, but may not use those fees to fund non-germane political or ideological activities that a non-member employee opposes. In Hudson, the Court held that the procedure a union adopts to implement this distinction must "be carefully tailored to minimize the infringement" of a non-member's First Amendment rights. 475 U.S. at 303. The procedure at issue in Hudson did not meet this standard "because it failed to minimize the risk that non-union employees' contributions might be used for impermissible purposes . . . failed to provide adequate justification for the advance reduction of dues, and . . . failed to offer a reasonably prompt decision by an impartial decisionmaker." Id. at 309. Constitutional requirements include, the Court declared, "an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Id. at 310.

The Supreme Court returned to the issue of integrated bar compulsory fees in Keller, concluding that an integrated bar can, consistent with the First Amendment, use a member's compulsory fees to fund activities germane to "regulating the legal profession and improving the quality of legal services," but not to fund non-germane activities the member opposes. 496 U.S. at 13-14. Lacking an adequate record to address procedural alternatives in detail, the Court stated that "an integrated bar could certainly meet its Abood obligation by adopting the sort of procedures described in Hudson." Id. at 17.

**2. SBAND's Post-Settlement Procedures.** SBAND concedes that its expenditures in support of Measure 6 were "non-germane" under Keller, so the issue in this case is whether SBAND has implemented constitutionally adequate procedures to protect the First Amendment rights of North Dakota attorneys who oppose a non-germane expenditure. When Fleck filed this action, SBAND's Legislative Policy provided that a member who dissented from a position on any legislative or ballot measure matter could receive a refund of that portion of his or her dues which would otherwise have been used in that activity. The Policy did not advise if members could opt out of paying for non-germane expenses in advance, inform members of the breakdown between germane and non-germane expenses, or allow members to challenge SBAND's calculation of germane expenses before an impartial decisionmaker. In response to this lawsuit, SBAND adopted revised policies that Fleck agreed comply with the minimum safeguards required by Keller and Hudson, and the district court dismissed Fleck's first claim without prejudice. Accordingly, it is the revised policies that are relevant to Fleck's appeal of the "opt-out" issue.

Each year, SBAND sends a Statement of License Fees Due. Unless exempt, a member must pay annual dues of either $380, $350, or $325, depending on years of practice. The Statement lists this figure as the "annual license fee." The member certifies that he or she has complied with rules governing trust accounts and malpractice insurance, and checks boxes to enroll in specialized SBAND sections for additional fees, contribute to the bar foundation, and donate to a pro bono fund. The following new section appears near the end of the revised Statement:

> OPTIONAL: Keller deduction relating to nonchargeable activities. Members wanting to take this deduction may deduct $10.07 if paying $380; $8.99 if paying $350; and $7.90 if paying $325. (See Insert.)

SBAND computes this deduction as a percentage of annual license fees based on the percentage of the prior year's fees that SBAND spent on non-germane activities.

Next to this explanation is a blank allowing the member to write in an amount to be deducted from the license fees due. At the end of the Statement, the member adds optional fees selected to the annual license fee and subtracts the "Keller deduction" if chosen. The resulting figure is the amount due. Members return the completed Statement with a check payable to the State Board of Bar Examiners ("Board"), which collects license fees and issues annual licenses. See N.D.C.C. § 27-11-22.[3]

An Insert with the new Statement is a Notice Concerning State Bar Dues Deduction and Mediation Process. This two-page document describes the holding in Keller, explains how SBAND calculates nonchargeable activities each year, and informs members how to object to SBAND determinations. In addition, a new Keller Policy available on SBAND's member website provides an additional notice:

> SBAND shall provide periodic notice to its membership of any expenditures that deviate from its pre-collection notice. SBAND shall also provide notice of any position it adopts regarding legislative proposals and initiated and referred measures within two weeks of SBAND's vote to adopt such positions. After being emailed to members of SBAND, such notices will be readily accessible at www.sband.org.

**3. The Opt-Out Issue.** Relying on the Supreme Court's recent decision in Knox v. Service Employees International Union, Local 1000, 567 U.S. 298 (2012), Fleck argues that the revised license fees Statement violates the First Amendment because it requires him to opt out of subsidizing non-germane expenses, and SBAND may only finance non-germane activities with compulsory fees paid by affirmatively consenting members. The district court concluded that Knox did not overrule prior cases holding that the First Amendment does not require an opt-in procedure.

---

[3]SBAND receives $75 of each annual license fee for operation of the lawyer discipline system and 80% of the remaining fee totals "for the purpose of administering and operating the association." § 27-12-04.

Railway Labor Act agency shop collective bargaining agreements at issue in Street and in Ellis v. Brotherhood of Railway Clerks, 466 U.S. 435 (1984), provided a "checkoff" procedure whereby the railroad employer sent union members' mandatory dues directly to the union and deducted the dues from the employees' paychecks. If members successfully objected to paying dues for union expenditures for political causes, the union would place them on "agency fee payer status." See generally Conrad v. Int'l Ass'n of Machinists, 338 F.3d 908, 910-11 (8th Cir. 2003). Likewise, in Hudson, the Chicago School Board agreed to deduct "proportionate share payments" from the paychecks of non-member teachers and send them directly to the Teachers Union; after the deduction, if the Union sustained a non-member's objection, future deductions of all non-members were reduced and the objector received a rebate. 475 U.S. at 295.

In Knox, a public-sector union provided an annual Hudson notice calculating germane expenses and permitting non-members to opt out of non-germane expenses by objecting within thirty days. 567 U.S. at 303. Thirty days later, the union imposed a one-time dues increase to fund its political opposition to controversial ballot measures and to re-electing the incumbent governor. Id. at 304-05. The union sent no new Hudson notice, applied a portion of the dues increase to non-members who already had opted out, and did not allow non-members who did not initially opt out to opt out of paying the special assessment. Id. at 305-06. The Court struck down this procedure, concluding that, "[t]o respect the limits of the First Amendment, the union should have sent out a new notice allowing nonmembers to opt in to the special fee rather than requiring them to opt out." Id. at 317.

In the majority opinion, five Justices more broadly criticized the opt-out procedure approved in its prior decisions:

> Once it is recognized, as our cases have, that a nonmember cannot be
> forced to fund a union's political or ideological activities, what is the

justification for putting the burden on the nonmember to opt out of making such a payment? Shouldn't the default rule comport with the probable preferences of most nonmembers? . . . An opt-out system creates a risk that the fees paid by nonmembers will be used to further political and ideological ends with which they do not agree.

Id. at 312. The Court explained that its tolerance of annual opt-out procedures came about "more as a historical accident than through the careful application of First Amendment principles." Id. The majority stated that these "prior decisions approach, if they do not cross, the limit of what the First Amendment can tolerate." Id. at 314. It invalidated the special assessment at issue because, even if the opt-out burden "can be justified during the collection of regular dues on an annual basis, there is no way to justify the additional burden of imposing yet another opt-out requirement to collect special fees whenever the union desires." Id. at 317. Two Justices agreed that the special assessment in Knox failed to follow procedures mandated by Hudson but disagreed with the majority's broad condemnation of opt-out procedures upheld in Hudson and Abood. Id. at 323 (Sotomayor, J., concurring in the judgment).

We agree with the district court that the decision in Knox left in place annual procedures established in Hudson, and cross-referenced in Keller, which included an opt-out feature. But this does not wholly answer the issue on this appeal, because Hudson requires procedures "carefully tailored to minimize the infringement" of a non-member's First Amendment rights, 475 U.S. at 303, which is a fact-intensive standard, as the Court acknowledged in Keller, 496 U.S. at 17. In our view, focusing on the revised SBAND procedures, there is an obvious answer to Fleck's challenge, namely, that the opt-out issue debated by the Court in Knox is simply not implicated by SBAND's revised license fee Statement.

In a Railway Labor Act or public sector union case involving a collectively bargained dues checkoff procedure, the employer transfers money the employee has earned directly to the union, unless the protesting employee affirmatively "opts out."

The union then gets to use this compulsory payment on non-germane expenditures the employee opposes, at least until the employee successfully objects and obtains a rebate. Here, on the other hand, North Dakota attorneys pay the annual license fee themselves. Fleck admits the revised license fee Statement adequately discloses a member's option not to fund non-germane expenditures, the issue resolved by the settlement and dismissal of his first claim. Before submitting an annual license fee payment, each member calculates the amount owing on the revised Statement. If he selects the Keller deduction, he writes a check for the lower amount that excludes a payment for SBAND's non-germane expenditures. If he does not choose the Keller deduction, he "opts in" to subsidizing non-germane expenses by the affirmative act of writing a check for the greater amount. Thus, the opt-out issue debated but not decided in Knox is irrelevant to whether SBAND's revised license fee procedures comply with the mandates of Keller and Hudson.

The judgment of the district court is affirmed.

_____